# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Gayla J. C.,                                    Case No. 21-cv-1687 (TNL)

            Plaintiff,

v.                                              **ORDER**

Kilolo Kijakazi,
Acting Commissioner of Social Security,[1]

            Defendant.

Clifford Michael Farrell, Manring & Farrell, P.O. Box 15037, 167 North High Street, Columbus, OH 43215; and Edward C. Olson, Disability Attorneys of Minnesota, 331 Second Avenue South, Suite 890, Minneapolis, MN 55401 (for Plaintiff); and

Kizuwanda Curtis, Special Assistant United States Attorney, Social Security Administration, 1301 Young Street, Suite 350, Mailroom 104, Dallas, TX 75202; and Ana H. Voss, Assistant United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Defendant).

## I. INTRODUCTION

Plaintiff Gayla J. C. brings the present case, contesting Defendant Commissioner of Social Security's denial of disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and supplemental security income ("SSI") under Title XVI of the same, 42 U.S.C. § 1381 *et seq.* The parties have consented to a final judgment from the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D. Minn. LR 72.1(c).

---

[1] The Court has substituted Acting Commissioner Kilolo Kijakazi for Andrew Saul. A public officer's "successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." Fed. R. Civ. P. 25(d).

This matter is before the Court on the parties' cross motions for summary judgment. ECF Nos. 17, 19.  Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, ECF No. 17, is **DENIED** and the Commissioner's Motion for Summary Judgment, ECF No. 19, is **GRANTED**.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI in November 2018 asserting that she has been disabled since January 2018 due to bilateral hand weakness, among other impairments.[2] Tr. 33, 36, 241-56.  Plaintiff's applications were denied initially and again upon reconsideration.  Tr. 33; *see generally* Tr. 69-121.

Plaintiff appealed the reconsideration of her DIB and SSI determinations by requesting a hearing before an administrative law judge ("ALJ").  Tr. 33, 143-44.  The ALJ held a hearing in June and September 2020, and issued an unfavorable decision.  Tr. 30-50, 161-83, 188-212, 215-32.  After receiving an unfavorable decision from the ALJ, Plaintiff requested review from the Appeals Council, which was denied.  Tr. 1-6.

Plaintiff then filed the instant action, challenging the ALJ's decision.  Compl., ECF No. 1.  The parties have filed cross motions for summary judgment.  ECF Nos. 17, 19. This matter is now fully briefed and ready for a determination on the papers.

---

[2] Only Plaintiff's hand-related impairments are at issue.  *See* Pl.'s Mem. in Supp. at 8, ECF No. 18 ("The outcome of this case revolves around [Plaintiff's] ability to use her hands.").

### III. SEPARATION OF POWERS

As an initial matter, Plaintiff asserts that the structure of the Social Security Administration is "constitutionally invalid," and the appointment of Andrew Saul as a single Commissioner of the Social Security Administration, who is removable only for cause and serves a longer term than that of the President, violates separation of powers. Pl.'s Mem. in Supp. at 11, ECF No. 18. Because "[t]he ALJ's delegation of authority in this case came from Mr. Saul," Plaintiff argues that the ALJ's decision is "constitutionally defective." *Id*. Plaintiff further argues that "the ALJ decided this case under regulations promulgated by Mr. Saul" when "Mr. Saul had no constitutional authority to issue those rules," and therefore "a presumptively inaccurate legal standard was utilized to adjudicate this disability claim at the administrative level." *Id*. at 12. Plaintiff requests that this case be "remanded for a *de novo* hearing before a new ALJ who does not suffer from the unconstitutional taint of having previously heard and decided this case at a time when the Commissioner had no lawful authority to appoint the ALJ or promulgate regulations, and when the ALJ had no lawful authority to hear or decide the case." *Id*. at 15.

"Removal of the Commissioner of Social Security is governed by 42 U.S.C. § 902(a)(3)." *Lisa Y. v. Comm'r of Soc. Sec.*, 570 F. Supp. 3d 993, 1001 (W.D. Wa. 2021). Under § 902(a)(3), the Commissioner serves a term of six years and "may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." The Commissioner concedes, and courts have found, that "§ 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause" following the Supreme Court's decisions in

*Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), and

*Collins v. Yellen*, 141 S. Ct. 1761 (2021).  Comm'r's Mem. in Supp. at 5, ECF No. 20; *see*

Office of Legal Counsel, U.S. Dep't of Justice, *Constitutionality of the Comm'r of Soc.*

*Sec.'s Tenure Protection*, 2021 WL 2981542, at \*7 (July 8, 2021) ("In light of the Court's

reasoning in *Collins* and *Seila Law*, we have reexamined the constitutional concerns that

we previously raised about the Commissioner's protection from removal when Congress

enacted the provision in 1994.  We believe that the best reading of those decisions compels

the conclusion that the statutory restriction on removing the Commissioner is

unconstitutional."); *see, e.g.*, *Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022) ("The

removal provision violates separation of powers principles. For the purpose of the

constitutional analysis, the Commissioner of Social Security is indistinguishable from the

Director of the [Federal Housing Finance Agency] discussed in *Collins* and the Director of

the [Consumer Financial Protection Bureau] discussed in *Seila Law*."); *Lisa Y.*, 570 F.

Supp. 3d at 1001 ("A straightforward application of *Seila Law* and *Collins* dictates a

finding that § 902(a)(3)'s removal provision violates separation of powers. As in *Seila Law*

and *Collins*, the Social Security Commissioner is a single officer at the head of an

administrative agency and removable only for cause.  *See* 42 U.S.C. § 902(a)(3). Section

902 thus has the same infirmity as the removal provisions at issue in *Seila Law* and

*Collins*.").

Nonetheless, "[t]he Supreme Court held in *Collins* that an unconstitutional removal

provision does not affect the *authority* of the underlying agency officials to act."

*Kaufmann*, 32 F.4th at 849.

4

> In *Collins*, the Supreme Court held that where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction caused her alleged harm. The Court reasoned that the relevant agency officials were 'properly appointed' pursuant to a statute that exhibited 'no constitutional defect in the . . . method of appointment' and that 'the unlawfulness of [a] removal provision does not strip [an official] of the power to undertake the other responsibilities of his office[.]' The Court continued that 'there is no reason to regard any of the actions taken' by the agency during this period 'as void.'

*Alice T. v. Kijakazi*, No. 8:21CV14, 2021 WL 5302141, at *18 (D. Neb. Nov. 15, 2021) (alteration in original) (citations omitted). Thus, "an officer properly appointed may exercise the authority of his office even though the statute purports to grant him unconstitutional removal protections." *Andre J. B. v. Kijakazi*, No. 20-cv-2320 (SRN/HB), 2022 WL 2308961, at *12 (D. Minn. June 6, 2022); *see Jean P. v. Kijakazi*, No. 8:21-CV-200, 2022 WL 1505797, at *13 (D. Neb. May 12, 2022) ("Even assuming the unconstitutionality of § 902(a)(3)'s removal provision, then-Commissioner Saul was permitted to undertake the responsibilities of his office, including the delegation of power to the ALJ and Appeals Council to decide cases." (footnote omitted)); *see also Collins*, 141 S. Ct. at 1788 n.23. Here, Plaintiff bases her constitutional challenge on the propriety of § 902(a)(3). She "does not dispute" that the ALJ was properly appointed, and notes that her argument does not contest the adjudicators' appointments, but rather the delegation of authority." Pl.'s Reply at 4, ECF No. 21; *see Kaufmann*, 32 F.4th at 849 ("[T]he ALJ, the members of the Appeals Council, Acting Commissioner Berryhill, and Commissioner Saul all served, at all relevant times, under valid appointments. 'As a result, there is no reason to regard any of the actions taken by the [agency] as void.'"). Accordingly, Plaintiff's

assertion that the ALJ was without "lawful authority" to decide this case is without merit. *See* Pl.'s Mem. in Supp. at 13; *see, e.g.*, *Kaufmann*, 32 F.4th at 849; *Hernandez v. Comm'r of Soc. Sec. Admin.*, No. CV-20-02070-PHX-JAT, 2022 WL 2286801, at *4 (D. Ariz. June 23, 2022); *Brown v. Kijakazi*, No. 1:20-CV-1035, 2022 WL 2222683, at *14-16 (M.D. N.C. June 21, 2022); *Andre J.B.*, 2022 WL 2308961, at *12; *Jean P.*, 2022 WL 1505797, at *13; *Lisa D. v. Kijakazi*, No. 8:21-CV-294, 2022 WL 952778, at *7 (D. Neb. Mar. 30, 2022); *Nudelman v. Comm'r of Soc. Sec. Admin.*, No. CV-20-08301-PCT-MTL, 2022 WL 101213, at *13 (D. Ariz. Jan, 11, 2022); *Lisa Y.*, 570 F. Supp. 3d at 1002-03.

Moreover, "[u]nconstitutional for-cause removal challenges alone . . . will not automatically serve to invalidate the ALJ's decision." *Nudelman*, 2022 WL 101213, at *13; *see Jean P.*, 2022 WL 1505797, at *14 ("The fact a party has been impacted by a decision of an agency that suffers from an alleged unconstitutional removal restriction does not mean that the actions or decisions of the agency are necessarily void or that the party is entitled to judicial relief."). "A party challenging an agency's past actions must . . . show how the unconstitutional removal provision *actually harmed* the party . . . ." *Kaufmann*, 32 F.4th at 849; *see also Andre J. B.*, 2022 WL 2308961, at *12.

Like the claimant in *Jean P.*, Plaintiff argues that the harm she suffered was not receiving "the constitutionally valid adjudication process from [the] Appeals Council" or "the constitutionally valid determination by the Appeals Council to which she was entitled." Pl.'s Reply at 5; *see also Jean P.*, 2022 WL 1505797, at *14 ("[The claimant] argues the harm she suffered was not receiving a constitutionally valid hearing, adjudication, or decision from either the ALJ or the Appeals Council."). But also like the

6

claimant in *Jean P.*, Plaintiff "has not shown a clear connection" between § 902(a)(3)'s limitation on removal and "the ALJ's and Appeals Council's decision denying her benefits." 2022 WL 1505797, at *14. The harm Plaintiff alleges is essentially the same as her absence-of-authority argument, namely, all the actions taken by the ALJ and the Appeals Council are void because of the removal restriction itself. As the Commissioner points out, "[u]nder Plaintiff's theory, she should be awarded a rehearing for no reason other than [§] 902(a)(3)'s existence, whether or not she can show that its restriction on the President's ability to remove the Commissioner had any effect on her benefits claim." Comm'r's Mem. in Supp. at 14. Absent "any causal link between the unconstitutional removal protection and the denial of [Plaintiff's] application," *Andre J. B.*, 2022 WL 2308961, at *12, Plaintiff "has not demonstrated the removal provision caused compensable harm," *Jean P.*, 2022 WL 1505797, at *14; *see also Kauffman*, 32 F.4th at 850 ("Nothing in the record suggests any link whatsoever between the removal provision and Claimant's case."); *Hernandez*, 2022 WL 2286801, at *4 ("Accordingly, because Plaintiff has not sufficiently alleged any actual, particularized harm and tied it to the unconstitutional statutory removal restriction in the Social Security Act, the Court declines to remand the case for a new hearing on this basis." (footnote omitted)); *see also, e.g.*, *Alice T.*, 2021 WL 5302141, at *18; *Lisa Y.*, 570 F. Supp. 3d at 1003-04; *Boger v. Kijakazi*, No. 1:20-CV-00331-KDB, 2021 WL 5023141, at *3 (W.D. N.C. Oct. 28, 2021); *cf. Collins*, 141 S. Ct. at 1802 ("Consider the hundreds of thousands of decisions that the Social Security Administration (SSA) makes each year. The SSA has a single head with for-cause removal protection; so a betting person might wager that the agency's removal provision

is next on the chopping block.  But given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone.  That makes sense.  Presidential control does not show itself in all, or even all important, regulation.  When an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue." (Kagan, J., concurring) (quotation and citations omitted)).

As Plaintiff has not met her burden to show that the removal protection in § 902(a)(3) affected the determination of her claim, the Court denies Plaintiff's motion and grants the Commissioner's motion with respect to Plaintiff's request for remand based on the argument that § 902(a)(3) violates separation of powers.[3]

## IV. DISABILITY CLAIM

### A.  Legal Standard

Disability benefits are available to individuals who are determined to be under a disability.  42 U.S.C. §§ 423(a)(1), 1381a; *see also* 20 C.F.R. §§ 404.315, 416.901.  An individual is considered to be disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).  This standard is met when

---

[3] Accordingly, the Court declines to consider the other arguments advanced by the Commissioner, namely, harmless error, the de facto officer doctrine, the rule of necessity, and broad prudential considerations.  *See* Comm'r's Mem. in Supp. at 15-19; *see, e.g.*, *Hernandez*, 2022 WL 2286801, at *4 n.1; *Jean P.*, 2022 WL 1505797, at *15 n.7; *Alice T.*, 2021 WL 5302141, at *19.

a severe physical or mental impairment, or impairments, renders the individual unable to do her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); *accord* 42 U.S.C. § 1382c(a)(3)(B); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. §§ 404.1512(a), 416.912(a).

The ALJ determines disability according to a five-step, sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). In this evaluation process, the ALJ determines the claimant's residual functional capacity, which "is the most [s]he can do despite h[er] limitations." 20 C.F.R. § 404.1545(a)(1); *accord* 20 C.F.R. § 416.945(a)(1); *see McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) ("A claimant's [residual functional capacity] represents the most [s]he can do despite the combined effects of all of h[er] credible limitations and must be based on all credible evidence."); *see also, e.g.*, *Schmitt v. Kijakazi*, 27 F. 4th 1353, 1360 (8th Cir. 2022) (same). "Because a claimant's [residual functional capacity] is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Perks v.*

*Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) (quotation omitted); *accord Schmitt*, 27 F. 4th at 1360.

At the same time, the residual-functional-capacity determination "is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." *Norper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020); *see Perks*, 687 F.3d at 1092; *see also* 20 C.F.R. §§ 404.1546(c), 416.946(c). "An ALJ determines a claimant's [residual functional capacity] based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or her] limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quotation omitted); *accord Schmitt*, 27 F. 4th at 1360; *Norper*, 964 F.3d at 744-45. As such, there is no requirement that a residual-functional-capacity determination "be supported by a specific medical opinion." *Schmitt*, 27 F. 4th at 1360 (quotation omitted). Nor is an ALJ "limited to considering medical evidence exclusively." *Id.* (quotation omitted). Accordingly, "[e]ven though the [residual-functional-capacity] assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Perks*, 687 F.3d at 1092 (quotation omitted); *accord Schmitt*, 27 F. 4th at 1360; *see* 20 C.F.R. §§ 404.1546(c), 416.946(c).

This Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "It means—and means only— such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Id.* (quotation omitted); *see, e.g.*, *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018) (defining "substantial evidence as less than a preponderance but enough that a reasonable mind would find it adequate to support the conclusion" (quotation omitted)).

This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); *see Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Boettcher*, 652 F.3d at 863; *accord Grindley*, 9 F.4th at 627; *Perks*, 687 F.3d at 1091. "The court must affirm the [ALJ's] decision if it is supported by substantial evidence on the record as a whole." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quotation omitted). Thus, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Perks*, 687 F.3d at 1091 (quotation omitted); *accord Chaney*, 812 F.3d at 676.

**B. ALJ's Decision**

In relevant part, the ALJ found that Plaintiff had the severe impairment of bilateral hand weakness,[4] and none of her impairments individually or in combination met or equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app.1. Tr. 36-38. As to Plaintiff's residual functional capacity, the ALJ concluded that Plaintiff

---

[4] The ALJ also found that Plaintiff had the severe impairments of major depressive disorder, anxiety disorder, and post-traumatic stress disorder. Tr. 36-38. But again, only Plaintiff's physical, hand-related impairments are at issue. *See* Pl.'s Mem. in Supp. at 8 ("The outcome of this case revolves around [Plaintiff's] ability to use her hands.").

had the residual functional capacity to perform a full range of work at all exertional levels

but with the following additional nonexertional limitations:

> [Plaintiff] is limited to superficial and brief contact with
> coworkers, supervisors, and the public. [Plaintiff] cannot
> perform complex work activity, but is able to perform detailed
> work. [Plaintiff] cannot work at a job involving use of both
> hands on a continuous basis with hard, powerful, firm gripping.

Tr. 38. Based on Plaintiff's age, education, work experience, and residual functional

capacity, the ALJ found that she was capable of performing past relevant work as a

pharmacy technician and routine office clerk. Tr. 42-44. Accordingly, the ALJ concluded

that Plaintiff was not under a disability. Tr. 44.

### C. Residual Functional Capacity

Plaintiff argues that the ALJ erred in his residual-functional-capacity determination

because he failed to evaluate the opinion evidence of Plaintiff's chiropractor properly. Pl.'s

Mem. in Supp. at 6.

### 1. Medical Records[5]

In April 2019, Plaintiff saw her primary care provider, David Detert, MD, for pain

in her right wrist. Tr. 716. Plaintiff reported that she had pain in both wrists, but the pain

was worse in her right wrist. *Id*. Plaintiff explained that the pain started while she was

working as a home health aide and helping a patient put her compression stockings on. *Id*.

According to Plaintiff, it was very difficult to put the socks on and required firm gripping

---

[5] As noted above, only Plaintiff's physical ability to use her hands is at issue here. Accordingly, the Court only
discusses the medical records that relate to that impairment.

and pulling with her hands.  *Id*.  Plaintiff explained that it had been two weeks since she put the stockings on the patient, but she continued to experience pain in her right wrist.  *Id*.

Dr. Detert noted that an "[i]nspection of her right forearm and hand does not reveal any erythema or gross deformity. Range of motion of her wrist is essentially normal."  Tr. 717.  Dr. Detert also noted that "palpation of the first carpometacarpal joint does not produce any tenderness," "[t]here is no crepitus," and he "could not feel any thickening or warmth."  *Id*.  Dr. Detert diagnosed Plaintiff with tendonitis and advised Plaintiff to "ice her forearm for at least an hour once a day" and take Naprosyn[6] three times a day.  *Id*.  Dr. Detert noted that he would "assume a gradual resolve" of Plaintiff's pain since she is no longer applying compression stockings.  *Id*.

In July 2019, Plaintiff saw Dr. Detert "for ongoing pain as well as weakness in both lower thumbs."  Tr. 729.  Plaintiff explained that the pain and weakness seemed to develop after she put compression stockings on one of her patients.  *Id*.  Plaintiff noted that she was experiencing aching in her thumbs and decreased grip strength, and that her right thumb was bothering her more than the left thumb.  *Id*.  She also explained that the pain bothers her more as the day goes on, but the pain does not awaken her at night.  *Id*.

Dr. Detert conducted an examination and noted that "[i]nspection of her hands does not reveal any obvious abnormality."  Tr. 730.  He observed that "[t]here is no deformity erythema of her joints or swelling," "[p]alpation of her [joints] does not produce any

---

[6] Naprosyn is a brand name for naproxen, a medication "used to relieve pain, tenderness, swelling, and stiffness." *Naproxen*, MedlinePlus, Nat'l Lib. of Med., https://medlineplus.gov/druginfo/meds/a681029.html (last accessed Aug. 30, 2022).

significant tenderness," and the "[r]ange of motion of her wrist is essentially normal." *Id*.

Dr. Detert noted that Plaintiff's thumb pain is "probably related to [a] simple strain." *Id*.

Dr. Detert advised Plaintiff to continue taking Naprosyn every morning "as it does seem to

help," and referred Plaintiff for occupational therapy at Big Stone Therapy for the pain. *Id*;

*accord* Tr. 890.

In August 2019, Plaintiff started occupational therapy at Big Stone Therapy.  Tr.

901.  Plaintiff completed an occupational therapy evaluation during her first session.  *Id*.

She described her thumb pain as "mild-moderate," rating her pain as a 4/10 while at rest

and a 4/10 with movement.  *Id*.  She reported that the pain is "aching," and that the pain

occurs daily.  *Id*.  She described having difficulty with tasks such as pouring from a pitcher,

driving, and her work tasks as a patient care assistant.  *Id*.  The occupational therapist (OT),

Kayla Oates, provided Plaintiff education on a home exercise program and noted that the

plan for Plaintiff's next visit was to increase thumb strength.  *Id*.

Plaintiff attended occupational therapy weekly from August 12 through November

5, 2019.  *See* Tr. 894-901.  During occupational therapy, Plaintiff completed exercises such

as thumb flexions and extensions, palmar adductions/abductions, stress ball squeezes,

finger extensions with rubber bands, and theraputty exercises.  *See id*.  Plaintiff also poured

pitchers of water, played guitar, and completed fine motor tasks like picking buttons out of

a bin with tweezers, picking beads out of theraputty, and removing and replacing nuts from

bolts.  *See id*.

Plaintiff generally reported that her pain was decreasing, though her pain fluctuated

from session to session.  For example, during her second session on August 19, Plaintiff

14

described her pain at rest as a 4/10 and her pain with movement as a 5/10. Tr. 901. She needed rest breaks during the exercises to decrease pain. *Id*. During her third session on August 26, she reported her pain at rest as a 1/10 and her pain with movement as a 4/10. Tr. 900. By her fourth session on September 3, Plaintiff reported "[n]o pain present." Tr. 899. She "reported no increased pain in hands and wrists after exercises" and "demonstrated good endurance . . . with little-to-no pain with exercises." *Id*. By September 10, she was able to pour a pitcher 3/4 full with her right hand with mild pain, and was able to pick 53 beads out of a bin with tweezers. *Id*. During that session, the OT noted that Plaintiff demonstrated increased grip strength and increased endurance. *Id*. On September 17, Plaintiff reported consistent pain before and after the occupational therapy session, with a pain level of 2/10 at rest and with movement. Tr. 898. On September 23, Plaintiff reported increased pain after cleaning her toilet that morning. Tr. 897. But the OT noted that despite the increased pain, Plaintiff demonstrated consistent strength and good fine motor skills. *Id*. On September 30, Plaintiff reported decreased pain in wrists, decreased pain in everyday tasks, and demonstrated no increased pain with increased resistance during exercises. Tr. 897. Plaintiff reported no pain present on October 14 and October 29. Tr. 894-95. On October 14, Plaintiff played guitar for the first time in a year and played two songs with no increased pain. Tr. 895. At her last session on November 5, she reported her pain at rest as a 1/10 but pain with movement as a 4/10. Tr. 894. She explained that her wrists were aching after putting compression socks on a patient the morning of the occupational therapy session. *Id*. The OT noted that Plaintiff "reported little to no pain" during the session. *Id*. The OT also noted that Plaintiff demonstrated increased strength

15

in her right hand but decreased strength in her left hand, though the OT pointed out that Plaintiff had lifted a gallon of milk multiple times the morning of the occupational therapy session. *Id*.

Plaintiff was discharged from occupational therapy on November 5 due to "Highest Practical Level Achieved." Tr. 911. The OT noted that Plaintiff achieved her short-term goal of demonstrating grip strength in both hands at 55 pounds and increasing independence in meal prep, patient care assistant job tasks, and driving. *Id*. On the date of discharge, Plaintiff demonstrated grip strength in the right hand at 55 pounds and the left hand at 34 pounds. *Id*. The OT also noted that Plaintiff achieved her long-term goal of demonstrating the ability to pour a full pitcher of liquid and increasing independence in meal prep and cooking tasks at home and at work. *Id*. The OT also reported that Plaintiff met her other long-term goal of a pain level of a 2/10 when driving. *Id*. For example, during her first session on August 12, Plaintiff described her pain as a 4/10 while driving but explained that it can get up to a 6-8/10 when driving for long periods of time. *Id*. By October 7, Plaintiff described her pain as a 3/10 while driving, and by November 5, it was a 0-1/10. *Id*. In the discharge paperwork, the OT noted that Plaintiff has increased strength and decreased pain in daily tasks. *Id*. The OT reported that Plaintiff has restarted and increased leisure activities such as playing guitar and clarinet. *Id*. The OT recommended that Plaintiff continue using the home exercise program, increasing leisure activity little by little, and using ice with any increased pain. *Id*.

In July 2020, Plaintiff saw chiropractor Barbara Kaiser, D.C., at Red Wing Chiropractic. Tr. 965-70. In her Patient Health Questionnaire, Plaintiff reported having

the following conditions presently: headaches; neck pain; upper, mid, and low back pain; shoulder pain; elbow/upper arm pain; wrist pain; hand pain; hip/upper leg pain; knee/lower leg pain; ankle/foot pain; and dizziness. Tr. 967. While Dr. Kaiser's notes are handwritten and difficult to read, it appears that Dr. Kaiser noted "decr[eased] fine [and] gross motor in hands" and "lift more than 10 [pounds]." Tr. 969.

### 2. Opinion Evidence

Plaintiff's chiropractor, Dr. Kaiser, completed a physical medical source statement in July 2020. Tr. 947-51. She reported that she had been treating Plaintiff for two weeks. Tr. 951. She noted that Plaintiff's conditions are "wrist pain; decreased grip strength; history of carpal tunnel syndrome and trigger thumbs," and that her hand weakness limits her physical capabilities. Tr. 948-49. She reported that Plaintiff has low grip strength and tenderness to palpation in wrist joints and forearm muscles. Tr. 949. Dr. Kaiser opined that Plaintiff could lift and carry no more than 10 pounds on an occasional basis (no more than 1/3 of an 8-hour day), and less than 10 pounds on a frequent basis (1/3 to 2/3 of an 8-hour day). Tr. 947. She also noted that Plaintiff's handling (gross manipulation), fingering (fine manipulation) and pushing/pulling abilities are affected by her impairments. Tr. 949. She opined that Plaintiff could perform handling and fingering only occasionally. *Id*.

### 3. ALJ's Evaluation of the Opinion Evidence

The ALJ summarized Dr. Kaiser's opinion as follows:

> She found [Plaintiff] limited to lifting no more than 10 pounds, and found no limitations in sitting, standing, or walking. She assessed decreased grip strength with a history of carpal tunnel, trigger thumbs, and wrist pain. She opined [Plaintiff] was limited to occasional handling and fingering. [Plaintiff] had

weakness in the hands and decreased grip strength. She opined
[Plaintiff] should avoid concentrated exposure to extreme cold
and extreme heat.

Tr. 42. The ALJ found that Dr. Kaiser's opinion was "partially persuasive." *Id*. The ALJ

noted that while Dr. Kaiser had only treated Plaintiff for the "very limited time" of two

weeks, "the records do support some difficulty with hand strength." *Id*. Accordingly, the

ALJ found that Plaintiff is "precluded from work with her hands on a continuous basis that

requires powerful or firm gripping." *Id*. The ALJ noted that this limitation accommodates

for decreased grip strength. *Idi*. The ALJ found, however, that there is not "sufficient

objective or clinical support for limiting [Plaintiff] to occasional handling and fingering."

*Id*. Lastly, the ALJ noted that he "strongly considered all [medical] opinions in assessing

[Plaintiff's] residual functional capacity and considered the combination of [Plaintiff's]

impairments in determining the residual functional capacity." *Id*.

Plaintiff argues that the ALJ erred in his residual-functional-capacity determination

because he failed to evaluate Dr. Kaiser's opinion properly. Pl.'s Mem. in Supp. at 6.

Specifically, Plaintiff notes that Dr. Kaiser opined that Plaintiff could only lift up to 10

pounds and should be limited to occasional handling and fingering. *Id*. at 7. Plaintiff

argues that the ALJ failed to explain his rationale for agreeing with Dr. Kaiser that the

record contained medical evidence limiting Plaintiff's upper extremities, but not adopting

Dr. Kaiser's limitations in full. *Id*. at 6-7. Plaintiff contends that the ALJ "simply

concluded that there was no evidence to support [Dr. Kaiser's] opinion," but failed to "cite

to anything in the record that would explain how the ALJ reached that conclusion." *Id*. at

9; Pl.'s Reply at 1. Plaintiff argues that the ALJ "did not comply with the appropriate

regulation governing how opinion evidence is to be evaluated," and the case must be remanded for further proceedings.  Pl.'s Reply at 1-2.

Plaintiff filed her applications for DIB and SSI in November 2018.  Tr. 33.  Effective March 27, 2017, the Social Security Administration implemented new regulations related to how ALJs will consider and articulate medical opinions.  *See generally* 20 C.F.R. §§ 404.1520c, 416.920c ("For claims filed . . . on or after March 27, 2017, the rules in this section apply.").  Under the new rules, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [a claimant's] medical sources."  20 C.F.R. § 404.1520c(a); *accord* 20 C.F.R. § 416.920c(a).  Instead, ALJs now evaluate the "persuasiveness" of medical opinions in light of five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) examining relationship, and (5) other factors.  20 C.F.R. § 404.1520c(a); *accord* 20 C.F.R. § 416.920c(a).  The first two factors, supportability and consistency, "are the most important factors [ALJs] consider when [they] determine how persuasive [they] find a medical source's medical opinions."  20 C.F.R. § 404.1520c(b)(2); *accord* 20 C.F.R. § 416.920c(b)(2).  Under the regulations, an ALJ "will explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions" in the decision. 20 C.F.R. § 404.1520c(b)(2); *accord* 20 C.F.R. § 416.920c(b)(2).  An ALJ "may, but [is] not required to, explain how [he or she] considered the [remaining] factors."  20 C.F.R. § 404.1520c(b)(2); *accord* 20 C.F.R. § 416.920c(b)(2).

Plaintiff argues that the ALJ failed to explain properly how Dr. Kaiser's opinions were either not consistent with or supported by the record.  Pl.'s Mem. in Supp. at 8-10;

Pl.'s Reply at 1-4.   The Court finds, however, that the ALJ properly considered the supportability and consistency of Dr. Kaiser's opinions.

First, supportability means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); *accord* 20 C.F.R. § 416.920c(c)(1).   "In other words, an opinion is more persuasive if it presents more relevant objective medical evidence and explanatory rationale in support of the opinion." *Morton v. Saul*, No. 2:19-CV-92 RLW, 2021 WL 307552, at *7 (E.D. Mo. Jan. 29, 2021).   In this case, the ALJ found that "the records do support some difficulty with hand strength," and the ALJ therefore adopted a limitation that precludes Plaintiff from working with her hands on a continuous basis that requires powerful or firm gripping. Tr. 42.   On the other hand, the ALJ found that there is not "sufficient objective or clinical support" for some of the limitations proposed by Dr. Kaiser, namely, lifting no more than 10 pounds and occasionally handling and fingering. *See id*.   The ALJ noted that "there is very little overall evidence and little objective or clinical evidence to support any greater limitations" than those the ALJ adopted. *Id*.   The ALJ pointed to the fact that Dr. Kaiser had only treated Plaintiff for two weeks at the time she completed her assessment. *See id*.

The Court finds that the ALJ properly considered the supportability factor by finding that Dr. Kaiser did not provide detailed support for her opinion. *See, e.g., Hirner v. Saul*, No. 2:21-CV-38 SRW, 2022 WL 3153720, at *5 (E.D. Mo. Aug. 8, 2022) (finding that an ALJ properly considered the supportability factor by noting that there was "no

persuasive support in the record for a finding [the claimant] would arrive late, leave early or miss work more than three times per month"); *contra Collins v. Kijakazi*, No. 6:20-CV-03237-MDH, 2021 WL 3909670, at *3 (W.D. Mo. Aug. 31, 2021) (finding that an ALJ properly considered the supportability factor when the ALJ found that the doctor "supported his opinion with a detailed report that cited to objective evidence").  Dr. Kaiser failed to cite any objective medical evidence or provide persuasive explanations to support her medical opinion.  *See* 20 C.F.R. § 404.1520c(c)(1); *accord* 20 C.F.R. § 416.920c(c)(1). Further, her opinion is conclusory and does not provide an assessment of Plaintiff's limitations.  For example, in Dr. Kaiser's medical source statement, when asked what Plaintiff's conditions were and what medical findings support the limitations opined by Dr. Kaiser, she noted "wrist pain, decreased grip strength, history of carpal tunnel syndrome and trigger thumbs." Tr. 948.  But Dr. Kaiser appears to base that on her initial encounter with Plaintiff in early July 2020, where she conducted an orthopedic, neurological, and physical examination.  *See* Tr. 969-70.  Her notes from this encounter are all handwritten and difficult to read, and it would be speculative for the Court to conclude that Dr. Kaiser made these findings herself as opposed to Plaintiff self-reporting a history of these issues. For instance, Dr. Kaiser's medical source statement says that Plaintiff has a "history of carpal tunnel syndrome." Tr. 948.  But the physical examination notes show that Dr. Kaiser did not conduct the "Tinsel Sign" or "Phalen's Test" during the examination, which are indicated as the two tests for carpal tunnel syndrome.  *See* Tr. 969.  Thus, Dr. Kaiser's opinion that Plaintiff was limited to lifting no more than 10 pounds and occasionally handling and fingering is not "supported with a good explanation and citations to the

objective medical evidence." *See McClure v. Saul*, No. 1:21-CV-20 SRW, 2022 WL 2072661, at *10 (E.D. Mo. June 9, 2022); *see also, e.g., Hirner*, 2022 WL 3153720, at *5 ("Although [the medical provider] listed Plaintiff's symptoms . . . , he did not explain how those symptoms would cause limitations in Plaintiff's ability to maintain employment.").

Further, with respect to supportability, the ALJ noted that greater limitations, such as those proposed by Dr. Kaiser, were not supported by the medical records because Plaintiff did not receive additional treatment for her condition after being discharged from occupational therapy. Tr. 42. *See Delapaz v. Kijakazi*, No. 4:21-cv-00835-JM-JJV, 2022 WL 2910519, at *3 (E.D. Ark. July 22, 2022) (finding that the ALJ properly addressed the supportability factor by noting, in part, that "there was no indication of any ongoing treatment from a [medical] provider"). Moreover, it was also proper for the ALJ to find Dr. Kaiser's opinion only partially persuasive given the "very limited time in which she treated" Plaintiff. *See* Tr. 42. "While not required, the ALJ is certainly permitted to consider the length of the claimant's treatment relationship with the medical source and the frequency of visits since these factors 'may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s).'" *Atwood v. Kijakazi*, No. 4:20-CV-1394 JAR, 2022 WL 407119, at *5 (E.D. Mo. Feb. 10, 2022) (quoting 20 C.F.R. § 404.1520c(c)(3)(i)-(iii)). Therefore, it was appropriate for the ALJ to note that Dr. Kaiser only treated Plaintiff for two weeks before providing her medical source statement. *See* Tr. 42.

With respect to the second factor, consistency means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from

other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administering medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2); *accord* 20 C.F.R. § 416.920c(c)(2).  "Stated more simply, an opinion is more persuasive if it is more consistent with the overall evidence as whole."  *Morton*, 2021 WL 307552, at *7.  Again, the ALJ found that Dr. Kaiser's opinion was partially persuasive because while "the records do support some difficulty with hand strength," there is not "sufficient objective or clinical support for limiting [Plaintiff] to occasional handling and fingering."  Tr. 42.  Further, the ALJ noted that while he gives Plaintiff "the benefit of the doubt with respect to the hand impairments, [ ] there is very little overall evidence and little objective or clinical evidence to support any greater limitations."  *Id.*

The Court finds that the ALJ properly considered the consistency factor.  Despite not using the word "inconsistent," by finding that the record does not support limitations greater than those provided in the residual functional capacity, the ALJ in effect found that Dr. Kaiser's limitations were inconsistent with the record.  *See Kelly M. v. Kijakazi*, No. 20-cv-2034 (ECT/JFD), 2022 WL 3227405, at *8 (quoting *Atwood v. Kijakazi*, No. 4:20-cv-1394 JAR, 2022 WL 407119, at *5 (E.D. Mo. Feb. 10, 2022) ("That the ALJ did not use the word 'consistency' is not determinative; word choice alone does not warrant reversal.")), *report and recommendation adopted* (D. Minn. May 16, 2022).  The ALJ cited to objective medical records that were inconsistent with Dr. Kaiser's limitations to occasional handling and fingering and lifting no more than 10 pounds.  For example, the ALJ noted that physical examinations of Plaintiff's hands were generally unremarkable, pointing to an April 2019 examination by Dr. Detert where Plaintiff's "wrist range of

motion was normal and there was no tenderness in the fingers," and a July 2019 examination where Plaintiff had "no significant tenderness and wrist range of motion was normal." *Id*. The ALJ then discussed Plaintiff's occupational therapy records from September through November 2019, noting that Plaintiff "demonstrated good fine motor skills, with some decreased endurance due to nonuse initially." *Id*. The ALJ explained that the occupational therapy records demonstrated that, "[t]hrough therapy, [Plaintiff] was able to increase her hand strength and she started using her thumbs spontaneously in activities of daily living. She was able to lift a gallon of milk multiple times. She was then discharged from therapy." *Id*. The ALJ also noted that Plaintiff did not appear to receive additional treatment for her hand-related issues after discharge from occupational therapy. *Id*. Thus, the ALJ adequately addressed the consistency factor. *See Hirner*, 2022 WL 3153720, at *6 (quoting *McClellan v. Kijakazi*, 2021 WL 4198390, at *3 (W.D. Mo. Sept. 15, 2021) ("By stating that Plaintiff's physical examinations 'do not show the level of dysfunction [Plaintiff] suggested,' the ALJ sufficiently considered and articulated the consistency of [Plaintiff's] medical opinion with other evidence in the record.")).

Further, other evidence mentioned throughout the ALJ's decision, such as Plaintiff's daily activities, reflects the inconsistencies with Dr. Kaiser's opinion that Plaintiff could only lift up to 10 pounds and should be limited to occasional handling and fingering. The ALJ noted, for example, that Plaintiff worked part-time as a wellness coach for seniors in assisted living and did activities like music and art with them. Tr. 36. She also participated in the community band on a weekly basis, drove a car, prepared meals daily, did household chores, gardened, and went to an adult exercise group twice a week. Tr. 36-37. She also

cared for her grandson two days a week and traveled recently to the north shore.  Tr. 41. The ALJ also noted that Plaintiff "received little treatment for physical impairments and the alleged limitations are not fully supported by the record."  Tr. 40.  *See Kelly M.*, 2022 WL 3227405, at *8; *Mark S. E. v. Kijakazi*, No. 20-cv-1954 (JFD), 2022 WL 834513, at *8 (D. Minn. Mar. 21, 2022) ("[T]he limitations in [the medical provider's] opinion are not consistent with Plaintiff's daily activities, which included 'driving, . . . grocery shopping, preparing simple meals, housecleaning, caring for his personal hygiene, . . . spending time with his family and friends, . . . exercising . . . [and] traveling to his cabin.").

In sum, the Court finds that the ALJ did not err in considering the supportability and consistency factors in determining that Dr. Kaiser's opinion was only partially persuasive, and that the ALJ's decision is supported by substantial evidence in the record as a whole. Accordingly, Plaintiff's motion for summary judgment is denied.

[*Continued on next page.*]

## V. ORDER

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Motion for Summary Judgment, ECF No. 17, is **DENIED.**

2.  The Commissioner's Motion for Summary Judgment, ECF No. 19, is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September __2__, 2022         _____*s/Tony N. Leung*_____
                                             Tony N. Leung
                                             United States Magistrate Judge
                                             District of Minnesota

                                             *Gayla J. C. v. Kijakazi*
                                             Case No. 21-cv-1687 (TNL)